CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 3 0 2005

JOHN F. CORCORAN, CLERK
BY:
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROBERT BROWN, | ) |
| Plaintiff, | ) Civil Action No. 7:04CV00478 |
| v. | ) **MEMORANDUM OPINION** |
| AMERICAN BANKERS LIFE ASSURANCE COMPANY OF FLORIDA, | ) By: Hon. Glen E. Conrad<br>) United States District Judge |
| Defendant. | ) |

Robert Brown brings this action under the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3), claiming that the defendant, American Bankers Life Assurance Company of Florida ("American Bankers Life"), improperly denied certain benefits under a long term disability policy offered through Brown's employer. Brown seeks unpaid benefits, restitution, declaratory and injunctive relief, attorney's fees and costs. This case is before the court on defendant's motion for summary judgment. For the reasons set forth below, the defendant's motion will be granted.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Robert Brown was an employee of Food Lion, Inc. During his employment, Brown purchased a long term disability policy from the defendant through his employer. Brown claims that when he was initially deciding whether to purchase the policy, he spoke with an agent of American Bankers Life who informed him that, while his long term disability benefits would be reduced in the event he became disabled and began receiving Social Security benefits, in no case would the combined benefit be less than 80% of his pre-disability salary.

Brown became permanently disabled in December 2002 due to familial spastic paraparesis. Although his claim under the policy was initially denied, Brown's claim was eventually approved, and he began receiving monthly short term disability benefits from American Bankers Life. He then applied for long term disability benefits through American Bankers Life, as well as Social Security benefits. Brown was approved for Social Security disability benefits and began receiving $1,254.00[1] per month. Brown was also approved for long term disability benefits from American Bankers Life.

Based on the previous representation from American Bankers Life's agent, Brown expected to receive a total of 80% of his salary, which was $27,000 per year at the time he became disabled. Therefore, according to Brown, his total benefit should have been $1,800.00 per month, with $1,254.00 coming from Social Security and $546.00 coming from American Bankers Life. Instead, American Bankers Life has paid a monthly benefit of only $100.00, the minimum monthly benefit under the policy.

The plaintiff exhausted the administrative remedies available with American Bankers Life in his attempt to recover the full $546.00 per month in long term disability benefits. He then filed this action claiming that his benefits were wrongfully denied in violation of ERISA and that American Bankers Life violated its fiduciary duties under ERISA. The defendant has now filed this motion for summary judgment.

## II. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly

---

[1] Another portion of Brown's complaint states that his monthly Social Security benefits are $1,281.00. The figure of $1,254.00 appears to be the correct one.

2

granted if "there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Industries, Inc., 763 F.2d 604, 610 (4th Cir. 1985). When a motion for summary judgment is supported by affidavits or other evidence as provided for in Rule 56, the opposing party may not rest upon the allegations in the pleadings and must, instead, present evidence showing that there is a genuine issue for trial. If the adverse party fails to present such evidence, summary judgment, if appropriate, should be entered. Fed. R. Civ. P. 56(e); Atkinson v. Bass, 579 F.2d 865, 866 (4th Cir.), cert. denied, 439 U.S. 1003 (1978).

### III. CLAIM FOR WRONGFUL DENIAL OF BENEFITS

The plaintiff first claims that American Bankers Life is required to pay him the benefits promised to him during the alleged conversation with defendant's agent, that is, a monthly benefit that, when combined with his monthly Social Security benefit, equals 80% of his prior monthly salary. Brown contends that the defendant's refusal to pay this amount is an abuse of its discretionary authority under the plan.

American Bankers Life denies that any of its agents made a statement to Brown with regard to the 80% guarantee. The defendant also contends that the unambiguous language of the long-term disability policy provides that the plaintiff is entitled only to the minimum monthly benefit of $100.00, regardless of any statements allegedly made by its agents to the contrary. The

court agrees with American Bankers Life with regard to this latter contention.

Courts considering eligibility for benefits under an ERISA plan generally consider only the plain meaning of the language of the plan. See Kress v. Food Employers Labor Relations Ass'n, 391 F.3d 563, 568 (4th Cir. 2004) (holding that courts will enforce the plain language of an ERISA plan in accordance with its literal meaning). In fact, the United States Court of Appeals for the Fourth Circuit has noted that "[w]hile a court should be hesitant to depart from the written terms of a contract under any circumstances, it is particularly inappropriate in a case involving ERISA, which places great emphasis upon adherence to the written provisions in an employee benefit plan." Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 56 (4th Cir. 1992).

Brown received a group disability income insurance certificate from American Bankers Life including a schedule which provided that his monthly benefit for total disability would be $1,125.00 with a minimum monthly benefit of $100.00. The certificate specifically provided for total disability benefits as follows:

> The amount of monthly benefit payable will be the Monthly Benefit for Total Disability shown in the Schedule.
>
> The amount of monthly benefit payable will be the Monthly Benefit for Total Disability shown in the Schedule, less the amount of Other Income Benefits shown below. The monthly benefit for Total Disability will never be reduced below the monthly minimum benefit of $100 regardless of the amount of other income benefits received.

Other Income Benefits includes any benefits received under the Social Security Act of the United States. The policy itself also echoes this language, though it does not include the first sentence as stated above, only the provision that the amount of monthly benefits would be the Monthly Benefit listed on the Schedule, less the amount of any Other Income Benefits.

4

Case 7:04-cv-00478-GEC   Document 23   Filed 04/30/05   Page 4 of 11   Pageid#: 131

American Bankers Life argues that the language of the policy is clear that Social Security benefits would be offset against the Monthly Benefit for Total Disability, but that, in any case, Brown would receive a minimum monthly benefit of $100. Here, the amount of Social Security benefits were greater than the Monthly Benefit listed on the schedule, therefore Brown received only the minimum monthly benefit of $100 in accordance with the policy.

Brown counters that the language of the policy is ambiguous in several respects. He first notes that the policy includes an earnings schedule with the equivalent monthly benefit for each pay range, but that this schedule includes no language regarding Social Security offsets or minimum monthly benefits. Brown also notes that the schedule included as part of the certificate sets out the monthly benefit for total disability but fails to include any mention of offsets. The certificate does, however, note that there is a minimum monthly benefit and includes language describing the offsets for Other Income Benefits on subsequent pages. Finally, Brown asserts that the language describing total disability benefits under the policy first states that the amount of benefit will be the Monthly Benefit shown in the schedule and then states that the amount of benefit will be the Monthly Benefit shown in the schedule reduced by certain offsets, subject to a monthly minimum. Therefore, according to Brown, the language is ambiguous because it states two significantly different possible monthly benefit amounts.

The court finds that the language in the policy and the certificate is not ambiguous. The certificate includes a schedule which lays out the monthly benefit, but includes a reference to the minimum monthly benefit under the policy. The language included in the Benefit section to describe Total Disability Benefits specifically states that the Monthly Benefit for Total Disability will be reduced by Other Income Benefits, including Social Security Benefits, subject to the

5

minimum monthly benefit. Taking the plan as a whole, the court concludes that the plain and natural meaning of the language is that any monthly long-term disability benefit due to Brown would be reduced by the amount of his Social Security benefits, but that he would, in any case, receive $100 per month.

Furthermore, because the language of the plan is not ambiguous, Brown may not make use of the doctrine of equitable estoppel to request that the court modify the written terms of that plan. In Coleman v. Nationwide Life Ins. Co., supra, the plaintiff was informed by agents of the plan administrator that she was covered by a group insurance plan when the plan, in fact, was no longer in effect due to nonpayment of premiums by her husband's employer. 969 F.2d at 56-57. The plaintiff in Coleman also attempted to raise an argument of equitable estoppel by asserting that the administrator should be estopped from denying coverage because of its representations to her that she was covered by the plan. Id. at 58. The Court held that the "[u]se of estoppel principles to effect a modification of a written employee benefit plan would conflict with "ERISA's emphatic preference for written agreements." Id. (internal citations omitted). The Court elaborated further on this principle stating that "[o]ral or informal written modifications to a plan, such as those alleged by Coleman in this case, are of no effect. Equitable estoppel principles, whether denominated as state or federal common law, have not been permitted to vary the written terms of a plan." Id. at 59. See also, Bakery & Confectionery Union & Industry Int'l Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1027 (4th Cir. 1997) (holding that "[i]n this circuit, equitable estoppel is not available to modify the written terms of an ERISA plan in the context of a participant's suit for benefits").

The Coleman Court did note that it might be appropriate to consider principles of

6

equitable estoppel in cases involving "interpretations of ambiguous plan provisions." Coleman, 969 F.2d 54 at 59. However, the Court did not directly address this issue as the case involved an outright modification, not an interpretation, in that the plaintiff claimed she actually had coverage when the terms of the policy were clear that coverage was not available. Id. Likewise, in this case, Brown is requesting that the court modify the long term disability plan in that he claims that he is entitled to benefits in excess of those specified under the clear terms of the policy. Therefore, regardless of whether or not Brown is correct in his assertion that an agent of American Bankers Life made certain representations to him, Brown cannot succeed on his claim for benefits under the policy.

## IV. CLAIM FOR BREACH OF FIDUCIARY DUTY

Plaintiff's second claim is that an agent of American Bankers Life misrepresented the amount it would pay to Brown in the event he became disabled and began receiving Social Security benefits. He also contends that the defendant was aware, at the time of the misrepresentation, that the monthly benefits he would receive under the plan would actually be offset by Social Security benefits and that he would receive only the minimum monthly benefit of $100. Plaintiff claims that, had he been properly informed, he would not have elected to purchase long term disability insurance from American Bankers Life. Brown concludes that this misrepresentation constituted a breach of the duty of loyalty owed to him from the defendant, who was acting in a fiduciary capacity.

American Bankers Life first contends that it cannot be held liable as a fiduciary because it was not actually the plan administrator. ERISA provides that if a plan administrator is not designated in the written plan documents, and there is no such designation in the plan documents

7

at issue here, then the plan sponsor is the plan administrator. 29 U.S.C. § 1002(16)(A). In this case, the plan sponsor was Brown's employer, Food Lion, Inc. See 29 U.S.C. § 1002(16)(B)(i) (plan sponsor is employer when employee benefit plan is established or maintained by a single employer). American Bankers Life contends that Food Lion, Inc. had the responsibility for informing its employee participants about the terms of the plan and of any changes. Another insurance company, Jefferson Pilot, had been the original carrier for long term disability insurance, and Food Lion, Inc. had previously sent its employees a notice of this change. The court hesitates to decide, for purposes of this motion for summary judgment, whether or not American Bankers Life operated as a fiduciary with regard to the misrepresentation alleged here because the parties have provided little information regarding the circumstances surrounding the making of the statements and the identity of the individual who allegedly made the statements.

Even if the court determined that American Bankers Life was a fiduciary with regard to the alleged misrepresentation made by defendant's agent, however, Brown would still not be entitled to relief because he must contend with the plain language of the plan. If American Bankers Life is considered a fiduciary for purposes of this case, it could be liable for a breach of fiduciary duty if the plaintiff could show that it knew or should have known that Brown labored "under a material misunderstanding that [would] inure to his detriment . . . – especially when that misunderstanding was fostered by the fiduciary's own material representations or omissions." Griggs v. E.I. Dupont De Nemours & Co., 237 F.3d 371, 381 (4th Cir. 2001). Nevertheless, Brown may obtain only appropriate equitable relief under the statute. 237 F.3d at 384; 29 U.S.C. § 1132(a)(3). This would encompass "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." Id.

8

quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993) (emphasis in original). Furthermore, in Coleman, supra, the Court held that a claim for breach of fiduciary duty could not succeed because the plaintiff "was entitled to no benefits under the contract, and this circuit has indicated that extracontractual damages are generally not available as 'other appropriate equitable relief' under § 1132(a)(3)." Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 60 n. 2 (4th Cir. 1992).

Here, the plaintiff requests a declaratory judgment that the defendant is liable for the amount of benefits allegedly described by its agent, past due benefits, restitution of unpaid benefits, an injunction to restrain the defendant from refusing to pay the full amount Brown claims he is owed and attorney's fees. These remedies would be "extracontractual" in that the plan clearly states that the Monthly Benefit will be offset by Social Security benefits, subject to a $100 minimum monthly benefit. If the court permitted Brown to collect these amounts, it would essentially be rewriting the terms of the written contract between the parties, an action not contemplated by ERISA and Fourth Circuit precedent as stated in Coleman, supra.

The plaintiff cites Griggs v. E.I. Dupont De Nemours & Co., 237 F.3d 371 (4th Cir. 2001) in support of his claim for breach of fiduciary duty. In Griggs, the plaintiff received information from his employer, the plan administrator, that indicated all participants in the temporary pension plan could take a lump sum distribution from the plan without suffering any tax liability as long as it was rolled into any qualified IRA. 237 F.3d at 374-75. When the plaintiff applied to take the lump sum distribution, the plan administrator performed certain calculations which disclosed that his distribution would not be tax free. Id. at 375. The employer failed to disclose this information to Griggs, who later incurred a substantial tax liability when he retired early and

9

received his lump sum distribution. Id. at 375-76. Griggs sued for breach of fiduciary duty and requested reinstatement to his previous position.

The Court held that "a fiduciary is at times obligated to affirmatively provide information to the beneficiary." Id. at 380. The Court also noted that Griggs's misunderstanding had been fostered by the employer's written explanation of the pension plan payment options. Id. at 382. The employer then failed to correct Griggs's misunderstanding when it became aware of Griggs's potential tax liabilities. Id. The Court held that the defendant's silence constituted a breach of fiduciary duty and that reinstatement was an available form of equitable relief. Id. at 384-85.

Brown likens his situation to that of Griggs in that American Bankers Life should have known that the information it had given to Brown was not correct and that Brown was relying on that information to his detriment. Unlike the situation in Griggs, however, American Bankers Life provided Brown with written information that *was* a correct representation of the terms of the plan, whereas the defendant in Griggs provided only *incorrect* written information. In addition, the form of relief requested by the plaintiff in Griggs, reinstatement to his original position, was not contrary to the plain meaning of the plan at issue there. The opposite is true here because, again, the benefits claimed by Brown under the plan would exceed those actually available under the clear terms of that plan. Therefore, even if Brown could succeed in showing that an agent of American Bankers Life made a misrepresentation to him, he could not succeed in obtaining any of his requested remedies.

V. **CONCLUSION**

For the reasons stated herein, the court will grant defendant's motion for summary judgment with regard to all of Brown's claims.

10

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER: This 30th day of April, 2005.

/s/ Jackson L. Kiser
United States District Judge

11